UNITED STATES of America,
Plaintiff—Appellee,

v.

Lisa Marie FIMBRES, Defendant—
Appellant.

No. 01–50469.
D.C. No. CR–00–03603–TJW.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 8, 2002.

Decided Oct. 23, 2002.

Before LAY,* CANBY, and PAEZ, Circuit Judges.

## MEMORANDUM**

Lisa Marie Fimbres was apprehended at the San Ysidro, California, port of entry from Mexico, when the van she was driving was discovered to have an alien concealed in its modified gas tank compartment. Fimbres was convicted of one count of bringing an alien into this country for financial gain in violation of 8 U.S.C. § 1324(a)(2)(B)(ii) and one count of bringing in an alien without presentation in violation of 8 U.S.C. § 1324(a)(2)(B)(iii). Fimbres appeals both convictions. We affirm her conviction for bringing in an alien without presentation, but we reverse her conviction for bringing in an alien for gain and remand for retrial on that charge.

*Sufficiency of Evidence of Financial Motive*

██ Fimbres argues that there was insufficient evidence that she acted for financial gain and that her motion for acquittal on the first count should, therefore, have been granted.[1] At trial, she testified that she was in the process of buying the van from two brothers, Ruben and Ricardo Garcia. She said she used the van only occasionally. According to Fimbres, she arranged with the Garcias to get the van from them on the day of her arrest, so that she could go shopping at Wal–Mart on the United States side of the border. She met the Garcias in a Tijuana parking lot, got in the van, and drove to the border.

There was sufficient evidence that Fimbres acted knowingly. She drove the van in which Ruiz–Salazar was hidden. The van carried only one to two gallons of gas, and it is a reasonable inference that alien smugglers would not take the risk of let-

---

* The Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. We review de novo claims of insufficient evidence. *United States v. Okafor,* 285 F.3d 842, 847 (9th Cir.2002). Viewing the evidence in the light most favorable to the prosecution, we must decide whether any rational trier of fact could have found beyond a reasonable doubt the essential elements of the offense charged. *Id.* at 848 (citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

ting someone who did not know of the alien's presence run out of gas. There were gasoline fumes in the van, and it is reasonable for a trier of fact to conclude that an unknowing actor would have investigated the fumes or stopped driving. Finally, there were conflicting statements about the ownership of the van and about the parking lot, which reasonably could have diminished Fimbres's credibility.

Because she was charged as an aider and abettor, it was not necessary for the prosecution to prove that Fimbres expected to gain personally from bringing Ruiz–Salazar across the border. *See United States v. Tsai*, 282 F.3d 690, 697 (9th Cir. 2002). All that was required was that the prosecution prove that she aided and abetted a principal who acted with a pecuniary motive. *Id.*

Although there was no direct evidence of payment, there was evidence from which the jury could draw the necessary inferences of pecuniary motive. The alteration of the gas tank was a significant project, which could give rise to the inference that this van was to be used repeatedly, which in turn could allow a rational juror to infer that this was a financially motivated operation. The alien who was found in the van testified that his brother, who had organized his transportation, told him that he would need money to pay the smugglers. The alien also testified that he did not know any of the individuals involved in getting him into the van and to the border, negating any suggestion that he was being transported as a personal favor. While the evidence of a motive of gain was not overwhelming, it was sufficient to support the verdict. The district court did not err in denying the motion for acquittal.

*Aiding and Abetting Instruction*

■ Fimbres contends that the jury instructions misstated the intent requirement, permitting the jury to find her guilty without finding that she had the requisite intent to violate U.S. immigration laws.[2]

To convict under an aiding and abetting theory, the jury must find "(1) that the accused had the specific intent to facilitate the commission of a crime by another, (2) that the accused had the requisite intent of the underlying substantive offense, (3) that the accused assisted or participated in the commission of the underlying substantive offense, and (4) that someone committed the underlying substantive offense." *United States v. Sayetsitty*, 107 F.3d 1405, 1412 (9th Cir.1997).

The jury was instructed that it could convict Fimbres for aiding and abetting if it found that "first, the crime was committed by someone; second, [Fimbres] knowingly and intentionally aided, counseled, commanded, induced or procured that person to commit the crime; and third [she] acted before the crime was complete." The judge also instructed the jury that: "If you find that Ms. Fimbres was unaware that an illegal alien was concealed in the van, she is not guilty."

These instructions adequately set forth the requirement that Fimbres acted with the intent to aid the crimes of bringing an alien in unlawfully for gain and without inspection. We find no plain error.

*Prosecutorial Misconduct*

■ Fimbres contends that the prosecutor engaged in repeated and prejudicial misconduct during the closing argument.[3]

2. We review jury instructions for plain error where, as here, counsel does not object at trial. *United States v. Barajas–Montiel,* 185 F.3d 947, 953 (9th Cir.1999).

3. We review claims of prosecutorial misconduct for abuse of discretion when the district court denied an objection to the closing argument. *United States v. Tam,* 240 F.3d 797,

The most troubling line of argument during the prosecutor's closing argument was the repeated statement that there was an alien-smuggling "business." The government contends that this line of argument was just a reasonable inference. *See United States v. Necoechea*, 986 F.2d 1273, 1282 (9th Cir.1993). There was nothing in the record, however, to support an inference connecting Fimbres with any such business. *Cf. United States v. Cabrera*, 201 F.3d 1243, 1250 (9th Cir.2000). Nor did the prosecutor use any language to make it clear to the jury this was an inference. *Cf. id.; Necoechea*, 986 F.2d at 1279. The suggestion that Fimbres was an employee of the business and that this was "her job" is particularly problematic, as it suggests that she smuggled aliens regularly. There was no evidence of other smuggling operations.

Because the evidence on the motive of financial gain, although sufficient, was not overwhelming and this improper line of argument was directly related to the question of financial motive, we find it more probable than not that this argument affected the jury's verdict with regard to financial motive. Accordingly, we reverse the conviction on the financial gain count. We do not reverse the conviction on the other count, however, because there was greater evidence that she violated 8 U.S.C. § 1324(a)(2)(B)(iii) and the argument that there was a business does not directly address any element of this offense.

Fimbres also contends that the prosecutor engaged in misconduct when he asserted that he could not legally introduce Exhibit K. While we agree that the prosecutor misstated the law, we do not find that the arguments about the exhibit's admissibility were prejudicial. The exhibit itself is neither particularly exculpatory nor particularly inculpatory. The prosecutor's statement was made in response to something Fimbres's attorney had said in her closing argument, and there was no direct attack on Fimbres's attorney. Although it was probably error for the district court to allow the statement, it was harmless error.

Finally, we find no improper vouching by the prosecutor. The prosecutor's statement about his role in the trial was made only once and was a response to a misstatement by Fimbres's counsel on the role of a prosecutor. The other statements complained of by Fimbres do not rise to the level of vouching. None of the statements carry any suggestion that the prosecutor or the court has any special way to monitor truthfulness. They were merely statements describing the witnesses and their apparent motives. There was no error in allowing these arguments.

*Denial of* Batson *Challenge*

■ Fimbres asserts that the prosecutor's peremptory strike of an African–American was race-based and violated her due process rights.[4]

The district court here used the state court method for jury selection; questions were limited to the twelve individuals in the jury box. The government used a peremptory challenge against Gerald

---

802 (9th Cir.2001). Reversal is required only if it is more probable than not that the alleged misconduct affected the jury's verdict. *United States v. Jimenez Recio*, 258 F.3d 1069, 1088 (9th Cir.2001), *cert. granted,* — U.S. ——, 122 S.Ct. 2288, 152 L.Ed.2d 1048 (2002). The reviewing court is to consider how egregious the misconduct was and how substantial the evidence of guilt was. *Karis v. Calderon*, 283 F.3d 1117, 1129 (9th Cir.2002), *petition for cert. filed.*

4. We review for clear error the trial court's finding that the prosecutor did not purposefully discriminate. *McClain v. Prunty*, 217 F.3d 1209, 1220 (9th Cir.2000).

Palmer, the only African–American in the jury box at that moment. When the strike was challenged as a violation of *Batson,* the prosecutor stated that Palmer was struck because he made expressions and gestures during questioning that the prosecutor felt indicated that he disagreed with aspects of immigration law, and the prosecutor therefore felt he might be a "renegade." This is a race-neutral reason for striking Palmer. *See Hernandez v. New York,* 500 U.S. 352, 360, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991). As the district court stated, the prosecution was "entitled to interpret [the juror's] behavior and his facial expressions." *See Turner v. Marshall,* 121 F.3d 1248, 1254 (9th Cir.1997).

Once the prosecutor offered a race-neutral reason for striking the juror, it was up to the court to determine whether the defense had shown intentional discrimination. *United States v. Bishop,* 959 F.2d 820, 824 (9th Cir.1992). No such showing was made. The district court did not err in rejecting the *Batson* challenge.

*Conclusion*

For the foregoing reasons, we REVERSE the conviction on 8 U.S.C. § 1324(a)(2)(B)(ii) and AFFIRM the conviction on 8 U.S.C. § 1324(a)(2)(B)(iii).

**AFFIRMED IN PART; REVERSED IN PART; REMANDED.**